*1112 OPINION.
Van Fossan:
The question to be determined in this case is whether or not a note for $1,000,000 and securities aggregating $750,000 in value should properly have been included in the invested capital of the petitioner. The evidence is that the corporation was a mere shell. It never issued any stock, even for the $1,000 paid in for organization expenses. It printed no stock certificates. So far as the record shows it had none of the usual corporate books. In the financial extremity in which they found themselves the three owners of the corporation signed personally and individually a promissory note for $1,000,000, while two of the three owners contributed or loaned to the fund of $750,000 to be put up as security such personally owned securities as they had available. The Siems-Carey partnership contributed its check for $35,000 and there was also contributed $250,000 in Liberty bonds “borrowed under (Clarke’s) guidance from Mrs. Stone, wife of Stone, of Hayden, Stone & Company.” Practically the sole evidence that these securities were “ paid in ” to the corporation is to be found in the statement attributed to Siems (deceased before the hearing) contained in the testimony of Clarke set out in the findings of fact, in which he states, “ I will turn these into the corporation,” and, later, “ I am turning these over to the corporation.” The intention to pay in capital or a mere statement of such an intention standing alone is not enough. The actions of the parties and the corporation must evince the intention and effect the actual paying in. No single step was ever taken either by the stockholders or the corporation other than as outlined to effectuate the transfer to the corporation. The securities were never assigned to the corporation by their owners nor were they taken up on the books of the corporation. Every circumstance surrounding the transaction goes to show that the securities never belonged to the corporation. The corporation paid nothing for them and gave nothing in return. Title never passed *1113 to the corporation. It merely borrowed them from the individuals who owned them and upon the conclusion of their use returned the same securities to the sources from which they came.
When the securities were released by the War Credits Board and returned to their individual owners there was no corporate action of any kind taken in connection with such return. No liquidating dividend or other distribution of assets was made and there is no evidence of the securities ever officially passing through the hands of the corporation.
Whether or not property is paid in to a corporation depends upon the facts surrounding the transaction and not upon any single statement to the effect that they were paid in. This is a conclusion that may or may not be justified by the facts of the case. In this case it clearly was not justified. From the record we are convinced that neither the note nor the securities were ever “ paid in ” to the corporation within the proper legal meaning of that term.
There is another ground upon which it would appear to be necessary to find against the contention of petitioner. Upon the evidence it is clear to us that the securities were borrowed for a specific and temporary use and were later returned to their individual owners. They were never assigned to the corporation and title never passed. It follows, therefore, that if they were capital at all they were borrowed capital, which is expressly excluded from invested capital by section 326 (b), which reads:
As used in this title the term “ invested capital ” does not include borrowed capital.
The provisions of the above section of the law were applied adversely to the taxpayer in the Appeal of Warren-Lamb Lumber Co., 1 B. T. A. 786, 788, where the Board says:
It thus appears that even though we should accept the allegations of the taxpayer as evidence that Lamb, at the time when he made these advances, intended that the sum should become part of the invested capital of the business of the taxpayer, such intention was not actually carried out and made effective until the time when the notes, given by the taxpayer as evidence of the advances, were actually exchanged for the preferred stock shares of the taxpayer company, and this exchange not having taken place until after the close of the year 1917 we must necessarily hold that during the year 1917 these advances represented borrowed capital and not invested capital.
The evidence in support of the taxpayer was much stronger in the above-cited case than in the instant case. See also Appeals of Kelly-Buckley Co., 1 B. T. A. 1154, and Harrolds Motor Car Co., 5 B. T. A. 429.

Judgment will be entered for the Commissioner.

Littleton, Smith and Teussell dissent.
Milliken did not participate.